**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | 2:25-CR-186-6 |
| v. | ) | |
| | ) | |
| ERIC VEGA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

Defendant Eric Vega filed a motion to suppress (bulk currency and cell phones) and a related motion for the return of property (cell phones).[1]  The Court has considered the parties' briefs and held a hearing on July 30, 2026. On careful consideration of the relevant law and facts, the Court DENIES the motions.

**DISCUSSION & ANALYSIS**

**I.    The warrants for the GPS tracker and the cell phones were supported by probable cause.**

Mr. Vega initially challenges certain warrants relating to the GPS monitoring of a white Toyota Corolla as unsupported by probable cause.  After reviewing the search warrants for the GPS tracking (ECF 1355-3, ECF 1355-4, ECF 1355-5, ECF 1355-6), the Court finds that the search-warrant affidavits were supported by probable cause.  The probable-cause affidavits include substantial evidence about the drug-trafficking operation and connections between the DTO, money-laundering operations, and the Toyota Corolla.  *Id.*  The search-warrant affidavits supplied a substantial basis for the magistrate judges' probable-cause determinations.  *States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (cleaned up).

---

[1] Mr. Vega filed four previous motions to suppress and return of property (ECF 1296; ECF 1298; ECF 1300; ECF 1302).  The Court denies these as moot and considers the most recently filed motions at ECF 1321, ECF 1322, & ECF 1327.

The same goes for the cell phones search warrant. ECF 1355-1. There is ample evidence in the search warrant connecting Mr. Vega and the phones to the DTO. For example, the DEA Task Force Officer describes her background and experience, noting that the cell phones were seized near Mr. Vega during the August 12, 2024, encounter when he appeared to be engaging in drug trafficking and notes that Mr. Vega had previously been observed by officers interacting with other members of the DTO. *Id.* at 10–14 The search-warrant affidavit therefore supplied a substantial basis for Judge Dodge's probable-cause determination. *States v. Stearn*, 597 F.3d at 554 (cleaned up). So any evidence that law enforcement obtained during the execution of the GPS and cell phone search warrants will not be suppressed.

## II.   Officers acted lawfully during the April 12, 2024, search.

Mr. Vega next challenges the officers' search of the two vehicles at issue. As background, this wasn't an ordinary traffic stop. Law enforcement had been surveilling the two vehicles at issue, the Pathfinder and Corolla, during a lengthy, detailed investigation into the larger drug and money-laundering operation. They were tracking these two vehicles, and had concluded that the vehicles were probably carrying drugs or drug money or both.[2] This is so because the vehicles were driving in tandem, driving on backroads and avoiding obvious highways, and moving baggage from one vehicle to another, among other surreptitious behavior.

This search at issue culminated on April 12, 2024, when the Pathfinder parked at a local motel, and the Corolla was parked a few miles away at a Get-Go gas station. Officers approached the parked Pathfinder, where Hugo Brito was the driver and Mr. Vega was the passenger. They questioned Mr. Brito. Mr. Brito consented to the search where two cell phones and $8,600 in bulk currency was found. A K9 dog then did an exterior sniff, which alerted to illegal drugs.

---

[2] This factual summary is based on DEA Special Agent Daniel Hoormann's credible testimony at a suppression hearing on July 30, 2026.

The officers cuffed Mr. Vega and had him stand outside the Pathfinder, because he was reaching for something in the car after he had been ordered to place his hands up. DEA Special Agent Hoormann then asked him some questions, but soon realized that Mr. Vega's English was limited or broken. They had what could be described as a "casual" conversation, for only a few minutes, and Special Agent Hoormann was able to clarify parts of the discussion and obtained Mr. Vega's consent to search the Corolla down the road at Get-Go.

Other officers went to the Get-Go where the Corolla was, along with the K9. The K9 alerted to drugs. Officers searched the car and seized $9,400 in bulk currency and another cell phone.

Based on this factual record, including the credible testimony of Special Agent Hoormann, the Court finds that the search was lawful.

First, the "stop" itself was supported by reasonable suspicion of drug activity, based on the red flags raised during the surveillance, as noted above.[3]

Second, the stop wasn't unreasonably prolonged. The officers stopped the car for drugs, and the K9 (already with the officers) performed the sniff soon thereafter. *See Rodriguez v. United States*, 575 U.S. 348, 350, 354 (2015).

Third, there is no dispute that the driver of the Pathfinder consented to the seizure two phones found in the vehicle. To the extent those were the driver's phones, officers were free to seize them. *See United States v. Matlock*, 415 U.S. 164 (1974). However, it appears during the interaction that officers became aware that one or both phones belonged to Mr. Vega. Even assuming the phones may have been owned by Mr. Vega, officers had a basis to seize them and then apply for warrants, because of the bulk currency found in the car and the K9's positive alert on the Pathfinder.

---

[3] Given that the car was already parked, the officers didn't need reasonable suspicion to go up to it (though they needed it if they sought to prolong the stop). *See Illinois v. Caballes*, 543 U.S. 405 (2005) (a K9 sniff that does extend a stop requires no level of suspicion).

*See, e.g., United States v. Massac*, 867 F.2d 174, 176 (3d Cir. 1989) (concluding that the positive canine alert on defendant's luggage gave police probable cause to arrest); *United States v. Hutchinson*, 471 F. Supp. 2d 497 (M.D. Pa. 2007), *aff'd*, 316 F. App'x 137 (3d Cir. 2009) (holding that positive canine alert provided officers with probable cause to conduct warrantless search of vehicle).

Fourth, the Court finds that Mr. Vega consented to the search of his Corolla. His consent was knowing and voluntary. Even though Mr. Vega was cuffed, this was a casual discussion involving Special Agent Hoormann. Other officers weren't crowding around, and the K9 (a non-threatening short-haired breed) was also not around him. Mr. Vega's English was broken, but the Court finds as credible Special Agent Hoormann's testimony that he was able to clarify things with Mr. Vega, such that Mr. Vega understood the discussion. As a whole, the Court finds that consent was given and was voluntary. *See United States v. Givan*, 320 F.3d 452, 459–60 (3d Cir. 2003) (finding that voluntary consent in traffic stops involves a totality-of-the-circumstances review, and can include the nature of the conversation between officer and defendant and no evidence of duress or coercion).

Fifth, even if consent wasn't given by Mr. Vega, the officers were free to do the K9 sniff on the Corolla. *See United States v. Lewis*, No. 03-cr-216, 2005 WL 1155749, at *5 (E.D. Pa. May 13, 2005) (finding that a K9 sniff of an unattended car absent consent is not a constitutional violation). Since the dog alerted, there was sufficient probable cause to then search the vehicle. *See United States v. Hutchinson*, 471 F. Supp. 2d (holding that positive canine alert provided officers with probable cause to conduct warrantless search of vehicle).

- 5 -

## CONCLUSION

For these reasons, the motions (ECF 1296; ECF 1298; ECF 1300; ECF 1302; ECF 1321; ECF 1322; ECF 1327) are DENIED.

DATE: August 3, 2026

BY THE COURT

/s/ J. Nicholas Ranjan
United States District Judge